# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JEREMY LANDRY (#566226)**                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                          **NO. 14-0372-SDD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 28, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JEREMY LANDRY (#566226)                                    CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                          NO. 14-0372-SDD-EWD

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Before the Court is the application of Petitioner Jeremy Landry for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

### I. Procedural History

In September 2007, Petitioner was charged by grand jury indictment in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana, with one count of aggravated rape. After pretrial motions were scheduled and heard, the matter proceeded to trial on November 30, 2009. On December 2, 2009, the jury found Petitioner guilty as charged. Upon the denial of post-trial motions, the trial judge sentenced Petitioner on March 22, 2010, to life imprisonment, without the benefit of probation, parole or suspension of sentence.

Petitioner pursued a direct appeal, asserting that the trial court erred in allowing the State to introduce the video interview of the minor victim as evidence of other crimes pursuant to La. Code Evid. Art. 412.2. On February 11, 2011, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's conviction and sentence. *See State v. Landry*, 57 So.3d 611, 2011 WL 2135470 (La. App. 1 Cir. 2011). Petitioner sought further review before the Louisiana Supreme Court and, on September 30, 2011, that Court denied review, without comment. *See State v.*

*Landry*, 71 So.3d 281 (La. 2011).

Petitioner signed an application for post-conviction relief ("PCR") on September 17, 2012, which application was docketed in the state trial court on September 21, 2012.[1]  Petitioner asserted therein (1) that he was provided with ineffective assistance of counsel (a) during jury selection, (b) through a failure to investigate and prepare an adequate defense, and (c) through a failure to call as a witness the pediatrician(s) who treated the victim during the period of the alleged rapes, (2) that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), (3) that he was improperly convicted based upon an *ex post facto* application of the aggravated rape statute, La. R.S. 14:42, (4) that he was denied due process and a fair trial when the jury was allowed to find him guilty based upon a duplicitous charge; and (5) that the State made or elicited prejudicial and improper remarks during *voir dire,* during trial and during closing argument.   On December 6, 2012, pursuant to written reasons, the trial court denied Petitioner's PCR application. It appears that the Court's Ruling was not docketed in the trial court until April 22, 2013 and forwarded to Petitioner on that later date.

On May 20, 2013, Petitioner filed an application for supervisory review in the Louisiana

---

1    Although Petitioner's application for post-conviction relief was docketed as filed in the state trial court on September 21, 2012, the United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings.   Accordingly, pleadings submitted by a *pro se* habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately docketed by the receiving court.   *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012).   Thus, inasmuch as Petitioner apparently signed his state court application on September 17, 2012 and presumably gave it to prison officials for mailing on that date, the Court will utilize that date as the presumptive date of filing.   In addition, in hereafter referencing the dates of filing of Petitioner's various *pro se* pleadings in the state courts and in this Court, the Court will utilize the dates that Petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts unless otherwise noted.

First Circuit Court of Appeal, which Court denied review on August 29, 2013. *See State v. Landry*, 2013 WL 12120769 (La. App. 1 Cir. Aug. 29, 2013). Petitioner thereafter sought further review in the Louisiana Supreme Court on September 13, 2013, and that Court denied review on April 25, 2014. *See State ex rel. Landry v. State*, 140 So.3d 734 (La. 2014).

Petitioner signed his federal habeas corpus application on June 11, 2014, and it was electronically submitted to this Court and filed on June 13, 2014. Petitioner asserts the following grounds for relief:

| | |
|---|---|
| Ground One: | He was provided with ineffective assistance of counsel (a) during jury selection, (b) through a failure to investigate and prepare an adequate defense, and (c) through a failure to call as a witness the minor victim's pediatrician(s) during the period of the alleged rapes; |
| Ground Two: | The State withheld evidence in violation of *Brady v. Maryland, supra*; |
| Ground Three: | He was improperly convicted based upon an *ex post facto* application of the aggravated rape statute, La. R.S. 14:42; |
| Ground Four: | He was denied due process and a fair trial when the jury was allowed to find him guilty based upon a duplicitous charge; |
| Ground Five: | The prosecution engaged in misconduct by making or eliciting prejudicial and improper remarks during *voir dire,* during trial and during closing argument. |

## II. Summary Of The Evidence

The facts, as summarized in the opinion of the Louisiana Court of Appeal for the First Circuit, are as follows:

In 2007, C.L., born November 5, 1993, told her best friend, Josie, that the defendant, C.L.'s stepfather, had sexually abused her. Josie told her mother what C.L. had said and, shortly thereafter, an investigation by the Office of Community Services (OCS) ensued. Myra Borne, a child protection investigator with OCS assigned to C.L.'s case, testified at trial that the abuse began when C.L. was five years old and ended when she was ten years old. Myra set up a Children's Advocacy Center (CAC) interview in Gonzales for C.L. Joelle Henderson with CAC interviewed C.L., and the CAC videotape was submitted into evidence and

played for the jury at trial.

> C.L. testified at trial that the defendant began inappropriately touching her when she was five or six years old and living in North Carolina. When they moved to a residence on Louis White Road in Ascension Parish, the defendant began having anal and oral sex with C.L. C.L. also performed oral sex on the defendant. In the CAC interview, C.L. stated that in North Carolina when she was five or six years old, the defendant repeatedly placed her on the couch and forced her to perform oral sex on him. The defendant also repeatedly inserted his finger into her anus. When C.L. was seven years old, they moved to Louisiana to a trailer in Bayou Pigeon. When C.L. was eight years old, they moved to a trailer on Louis White Road in Ascension Parish. While in Louisiana, the defendant repeatedly had anal sex with C.L. on the bed. He also performed oral sex on C.L. and forced her to perform oral sex on him. C.L. stated that she told the defendant's mother and stepmother about the abuse, and they told her to fight back. When C.L. was ten years old, the defendant stopped abusing her "all of a sudden."

*See State v. Landry, supra*, 2013 WL 12120769, *1.

In addition to the foregoing, Myra Borne, the OCS investigator, testified that she conducted interviews with both the victim's mother and the defendant. According to Ms. Borne, the victim's mother acknowledged that the victim had reported the offenses "over the years," *see* Tr. at p. 177, and the defendant acknowledged that his wife had questioned him about sexual abuse of the victim "over the years." *See id.* at p. 172. This was consistent with the victim's assertion that she had told her mother of the abuse shortly after it commenced at age 5 or 6, but was contradicted by the victim's mother at trial, who testified that there were no reports of abuse until the victim was age 10, at or around the time that the abuse allegedly ended. According to the victim's mother, she conducted a physical examination of the victim at that time but saw no evidence of sexual abuse as she interpreted it. Whereas the victim asserted that she had also reported the abuse to her grandmother and step-grandmother, both women testified at trial that no reports of abuse had been made to them. The victim further testified with regard to a red mark that she had seen on Petitioner's penis, and her testimony in this regard was corroborated by photographs of Petitioner's penis introduced at trial and by Petitioner's acknowledgement to a sheriff's department employee

during booking that he suffered with a "skin condition" that he referred to as "psoriasis." Finally, testimony was also presented by an examining physician that although there was no physical evidence to corroborate the victim's claims, children's skin heals very quickly, and it would not be unusual for a victim of anal intercourse to have a normal examination several years after the abuse stopped.

### III. Applicable Law and Analysis

Turning to a consideration of Petitioner's claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court

determinations of underlying factual issues are presumed correct, and Petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *McCamey v. Epps*, 658 F.3d 491, 497 (5th Cir. 2011). Review under § 2254(d)(1) focuses on what a state court knew and did. *Cullen v. Pinholster, supra*, 563 U.S. at 182. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas corpus petitioner must overcome the limitation of § 2254(d)(1) based on the record that was before that state court." *Id*. at 184. State court decisions are measured against the Supreme Court's precedents as of "the time the state court renders its decisions." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). *Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d). *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).[2]

To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision "applies a rule that contradicts [such] law" and how the decision "confronts [the] set of facts" that were before the state court. *Williams v. Taylor*, 529 U.S. 362, 405, 406 (2000). If the state court decision "identifies the correct governing legal principle" in existence at the time, a federal court must assess whether the decision "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

---

[2]    The Fifth Circuit Court of Appeals has concluded that a federal court may properly hold an evidentiary hearing when it determines, based solely on the state court record, that the state court's determination was contrary to or involved an unreasonable application of clearly established federal law. *Bobby Smith v. Burl Cain*, 708 F.3d 628, 634 (5th Cir. 2013).

The State contends that, applying this standard to Petitioner's claims, there is no basis for the granting of habeas corpus relief.

Petitioner's Claim No. 1, Regarding Alleged
Ineffective Assistance Of Trial Counsel, Is Without Merit

Petitioner initially asserts that he was deprived of his constitutional right to effective representation in several respects. In this regard, a habeas petitioner who asserts that he has been provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, Petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Brown v. Dretke*, 419 F.3d 365, 374 (5th Cir. 2005). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See id.; Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Martin v. McCotter,* 796 F.2d 813, 817 (5th Cir. 1986). Great deference is given to counsel's exercise of professional judgment. *Id.*

If Petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must

affirmatively demonstrate prejudice resulting from the alleged errors.  *See Premo v. Moore*, 562 U.S. 115, 122 (2011) ("To establish ineffective assistance of counsel, 'a defendant must show both deficient performance by counsel and prejudice").  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for Petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington, supra*, 466 U.S. at 693.  Rather, Petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Williams v. Taylor*, 529 U.S. 362, 391 (2000).  A habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id*.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that Petitioner cannot make in the instant case.  Petitioner first contends that he was provided with ineffective assistance of counsel during jury selection.  In this regard, a fair and impartial jury is mandated under the Sixth Amendment.  *Irvin v. Down*, 366 U.S. 717 (1961).  The exercise of peremptory challenges and challenges for cause by the State and defense during *voir dire* questioning of prospective jurors is the procedure by which this right is primarily secured.  *United States v. Nell*, 526 F.2d 1223 (5th Cir. 1976).  After both generalized and targeted questioning of the members of the jury panel, the parties are typically given the opportunity to challenge certain jurors for cause, *i.e.*, for reasons of clearly apparent partiality, bias or hardship that would make them unfit to serve as jurors.  This determination of clear bias, partiality or hardship rests largely in the discretion of the trial judge, and absent an abuse of such

discretion, the trial court will not be reversed. *Denton v. Quarterman*, 2007 WL 846516, *5 (N.D. Tex. Mar. 21, 2007), *citing United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981), *overruled on other grounds, United States v. Adamson*, 700 F.2d 953 (5th Cir. 1983). Subsequently, the parties are given a limited opportunity to utilize peremptory challenges to thereby excuse certain jurors that they believe would not be fairly disposed in favor of their respective positions. No reason need be given for the exercise of peremptory challenges so long as the challenges are not utilized for a constitutionally impermissible discriminatory purpose, such as for exclusion of members of a particular race.

In the instant case, the record reflects that the attorneys for both the prosecution and the defense engaged in *voir dire* questioning of the jury panel. After such questioning, the State's attorney sought the exclusion of certain jurors for cause, and the trial court accepted two of those challenges over Petitioner's objection and rejected three upon a finding that the prospective jurors had sufficiently indicated that they could be fair and unbiased in evaluating the evidence and in following the instructions of the court. Petitioner then indicated that he had no challenges for cause as to the first panel, and the parties moved to the exercise of peremptory challenges. Both parties then privately executed peremptory challenges relative to the panel, with the State striking four prospective jurors therefrom and Petitioner striking three. Inasmuch as the first panel then had the requisite number of remaining prospective jurors, 12 in all, and inasmuch as neither side wished to exercise any further "back-strikes" as to members of the panel, the trial court swore in the jury with these 12 members. The trial court then called a second panel for the purpose of choosing alternate jurors.[3] After engaging in *voir dire* relative to this second panel, Petitioner

---

[3]    It appears that there was initially going to be only one alternate juror chosen, but the parties agreed to release one member of the first panel and to choose two members from the second panel, with the first of those chosen to take the place of the released juror and with the second to be the

challenged one juror for cause, which challenge the trial court rejected over Petitioner's objection, and the State indicated that it had no challenges for cause. Petitioner then exercised his one available peremptory challenge, and the matter proceeded to trial with 12 jurors and one alternate.

Petitioner now contends that he "was denied both his right to an impartial jury and the intelligent exercise of his peremptory challenges by the deficient performance of counsel, coupled with the trial court's failure to dismiss jurors for cause when legitimate grounds for doing so existed." Specifically, Petitioner asserts that "[a] review of the record demonstrates that biased and partial jurors were selected for service during Petitioner's trial," and he specifically points to six members of the jury venire of whom he complains, Robin Abboud, Melvin Boudreaux, Connie Chappel, Matthew Carlo, Rena McCoy and Tressy Simmons. As discussed hereafter, however, the Court finds no deficiencies in the conduct of Petitioner's counsel that would warrant the grant of habeas corpus relief.

In the first place, the Court can dispense with Petitioner's complaints regarding certain of the above-named jurors. Specifically, as to Connie Chappel, a sheriff's office employee who worked as a 911 Dispatcher, neither the State nor Petitioner challenged this prospective juror for cause and Petitioner, therefore, cannot complain about the trial judge's failure to excuse this juror for this reason. *See Denton v. Quarterman, supra* (noting that no authority had been found that justified the excusal of a juror for cause when no request therefor had been made). Further, the record reflects that Petitioner in fact exercised a peremptory challenge as to this prospective juror and, as a result, she did not serve on the jury that convicted him. *Cf., United States v. Martinez-Salazar*, 528 U.S. 304 (2000) (holding that a defendant's use of a peremptory challenge after the trial court denies a challenge for cause does not violate an accused's constitutional rights). Nor

---

alternate.

was Petitioner prejudiced by the use of a peremptory challenge as to this prospective juror because he did not thereby exhaust all of his remaining peremptory challenges during *voir dire* of the first panel. As a result, he was not forced, by the use of that peremptory challenge, to accept another unfavorable juror that he would have challenged but for the exhaustion of his peremptory strikes. Next, as for Matthew Carlo, it appears from the questioning of this prospective juror that he may arguably have been biased in favor of Petitioner and against the State. Thus, it was the State that initially sought to exclude juror Carlo for cause, which request was denied by the trial court. In this regard, juror Carlo testified during *voir dire* that he had a serious question that he "[couldn't] seem to get past," specifically regarding the credibility of the victim in light of her failure to report the alleged aggravated rapes over a lengthy period of time. *See* Tr. at p. 54. In addition, juror Carlo twice stated a belief that "it's going to be very difficult for the State to prove" its case. *See id.* at p. 64. Whereas juror Carlo's responses were somewhat contradictory, suggesting that he would tend to want to believe the statement of a child and that he "[doesn't] see very many kids lying about serious offense as this," *see id.*, he was subsequently rehabilitated during additional questioning by the trial judge, *see id.* at pp. 75-78, and indicated that he could be fair in evaluating the evidence presented. Accordingly, this Court is unable to conclude that it was deficient performance for Petitioner's attorney to accept Carlo as a juror in the case. Finally, as to Tressy Simmons, a member of the second panel who testified that she had been raped as a child, there was no deficient performance as to this prospective juror because Petitioner's attorney in fact vigorously sought to exclude this juror for cause, and his request in this regard was denied by the trial court. *See id.* at p. 116. Further, even if there was error on the part of the trial judge in allowing juror Simmons to remain on the panel, the record reflects that juror Simmons was selected only as an alternate juror and so was excused from the jury panel before deliberations began and

did not participate therein. Any suggestion by Petitioner that the mere presence of the alternate juror in the jury box during trial prejudiced him is entirely speculative and unsupported by the record, particularly inasmuch as the trial court admonished the jury panel before trial not to discuss the case among themselves until authorized to do so.

Turning to a consideration of the three remaining jurors of whom Petitioner complains, the Court notes that the attorneys for the State and the Petitioner extracted from each of these jurors the assurance that they would be fair and impartial in evaluating the evidence that was placed before them. The Court further notes that the selection of a criminal jury is an activity that is peculiarly within the province of a trial attorney's expertise and discretion, involving as it does a close in-person evaluation of the demeanor and perceived credibility of the members of the panel in question. The Court will not normally second-guess an attorney's exercise of discretion in this context in the absence of a clear showing of bias, partiality or error. Applying this standard, the Court finds no basis to overturn the conviction based upon the actions of Petitioner's attorney during *voir dire*. Specifically, there was a rational basis for his decision to retain the referenced jurors on Petitioner's panel. As for Robin Abboud, although she testified that she was a cousin of the district attorney's father, that she had been involved in unspecified "domestic abuse" in the past, and that a close friend's daughter had been the subject of sexual abuse years previously, she also testified that she would expect for there to be physical evidence of sexual abuse in a case of this type, as well as corroborating testimony from a doctor regarding same to support a rape conviction involving a young girl. *See id.* at p. 53. Knowing that such evidence and testimony would not be forthcoming during trial, Petitioner's attorney may well have believed that juror Abboud would be beneficial to Petitioner's case. Further, juror Abboud made clear that she would take her responsibility as a juror very seriously, specifically noting that it's "a big decision

to have to put someone away for life" and that she was "not going to take that lightly." *See id*. at p. 71.   Turning to juror Melvin Boudreaux, although this juror testified that he had a son who was a deputy in Ascension Parish and that he may have heard his son talk about the case "a little," he couldn't be sure that it was the same case and, in any event, he would be fair and impartial in evaluating the evidence before him. *See id*. at p. 18.   It is further possible that Petitioner's attorney chose to retain this juror because he expressed a view that the State would need to prove its case to a tune of "a hundred percent or ninety nine." *See id*. at p. 68.   Finally, as to Rena McCoy, Petitioner points to no real deficiency as to this juror, other than the fact that she testified that she had been the victim of an unspecified crime in the past, about which no further questions were asked by either side. *See id*. at p. 101.   Notwithstanding, this juror testified that she could be fair and unbiased in her evaluation of the evidence, that she would not hold against Petitioner a decision not to testify (an issue that gave several other jurors pause), *see id*. at p. 104, and that she would put aside a natural tendency to worry about alleged sexual brutality visited upon a child and "look at the facts and take that out of mind and look at strictly what happened." *See id*. at p. 112. In short, as to none of these jurors may it clearly be said that Petitioner's attorney erred in evaluating and assessing their likely fairness and impartiality in evaluating the evidence and deliberating over Petitioner's fate.   Nor may it be said that Petitioner has shown clear prejudice resulting from his attorney's conduct or, specifically, that the results of his trial would have been different had other action been taken during the *voir dire* proceedings.   *See Davis v. Thaler*, 511 Fed. Appx. 327, 332 (5th Cir. 2013) (rejecting a claim of deficient performance in connection with juror bias where jurors had "merely reveal[ed] an inclination to give greater weight to certain testimony" but "provide[d] no indication that [they] harbored any prejudice against the defendant or in favor of the State or the victim, or would otherwise be prevented from impartially determining

[defendant's] guilt or innocence"), *citing Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002) ("in evaluating claims of juror partiality, we must consider whether the jurors in a given case had 'such fixed opinions that they could not judge impartially the guilt of the defendant'").

Petitioner next asserts that his attorney provided ineffective assistance during trial by failing to adequately investigate and prepare a defense to the State's case, specifically with regard to impeaching the credibility of the "single witness," *i.e.*, the minor child who was accusing Petitioner of the offense charged. There is no support for this assertion. The record reflects that Petitioner's attorney was provided with the investigative report and the pretrial statements made by the victim before trial, and the trial transcript reflects his familiarity with the evidence adduced at trial. Petitioner's attorney conducted a vigorous cross-examination of virtually all witnesses, seeking to place emphasis on the lengthy period of time that elapsed before the victim reported the alleged offenses and the lack of clarity relative to the specific times and places where the offenses occurred. Petitioner's attorney further sought to emphasize the lack of physical evidence supporting the offense charged and the fact that the testimony of only a single person was the basis for the serious charge levied against him. Finally, Petitioner's attorney mounted a conscientious effort to withhold from the jury the videotape taken of the victim after the initial report of the offense to authorities, challenging both its admissibility and the chain of custody thereof. Although unsuccessful, this effort reflected diligent attention on the part of Petitioner's attorney to the facts of the case and to the potential defenses available to him.

The sole basis for Petitioner's challenge to the investigation and preparedness of his attorney is essentially an assertion that his attorney failed to more vigorously cross-examine the minor victim and other witnesses with regard to what are, in fact, relatively minor inconsistencies in several reports prepared in connection with the case. Specifically, Petitioner points to a

purported inconsistency between a police report and the victim's taped interview, in one of which the victim purportedly stated that she was concerned the abuse would start again because Petitioner had started "rubbing her shoulders" and in the other she stated such concern was because Petitioner had urged her to go take a bath in his bathroom on one occasion. Further, Petitioner points to a statement by the victim in a police report that the victim believed her mother was afraid of Petitioner, whereas this assertion was not repeated in any other report or at trial. Petitioner contends that "[c]ounsel was ineffective in not cross-examining [the victim] based on these issues in the police reports." Finally, Petitioner points to inconsistencies between the victim's statement to an investigator that she had reported the abuse to her mother, grandmother and step-grandmother without positive results, whereas the grandmother and step-grandmother denied that any such reports were made, and the victim's mother testified that the only report was made when the victim was ten years old, at which time the mother allegedly questioned Petitioner, called a physician and conducted a physical exam that disclosed no visible signs of abuse.

Notwithstanding the foregoing, the Court recognizes the dilemma faced by an attorney who is cross-examining a minor victim of a purported sexual abuse offense, which dilemma is multiplied when the victim was a very small child when the offenses began and then continued over a period of years. The attorney runs a risk of alienating the jury by being overly aggressive, harsh and critical in addressing the fragile and vulnerable witness. Accordingly, it was not unreasonable for Petitioner's counsel to refrain from taking a more aggressive tack in cross-examining the victim at trial. Further, it appears from the record that Petitioner's attorney vigorously cross-examined the remaining witnesses, pointed out the inconsistency between the victim's assertion that she made repeated reports to her mother and grandmothers and their contrasting assertions denying such reports, and otherwise adequately addressed the weaknesses

in the State's case, seeking to highlight the pertinent inconsistencies in the evidence and in the testimony of the various witnesses. For this reason, the Court sees no deficient conduct in counsel's investigation and preparation in this case.

Finally, Petitioner asserts that he was provided with ineffective assistance because his trial attorney failed to call as witnesses at trial one or more pediatricians who had seen or treated the victim during the period that the alleged abuse was occurring. According to Petitioner, this testimony could have confirmed both that the victim did not report the occurrence of the repeated rapes and that no evidence of rape or other abuse was observed. Notwithstanding, complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness' testimony are largely speculative. *Gregory v. Thaler,* 601 F.3d 347, 352–353 (5th Cir. 2010) *citing Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir. 2007) and *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985); U.S. v. Bernard, 762 F.3d 467, 473 (5th Cir. 2014); *Sayre v. Anderson,* 238 F.3d 631, 635–36 (5th Cir. 2001), *citing Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir.1 985), *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984), *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978); *Evans v. Cockrell,* 285 F.3d 370, 377(5th Cir. 2002). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient and nearly impossible to determine whether Petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir. 1994).

Moreover, where the only evidence of a missing witness's testimony is from the defendant,

courts view such claims with great caution. *Sayre v. Anderson, supra,* 238 F.3d at 636. Thus, "[a] prisoner's bald conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Id.* Further, to demonstrate the requisite *Strickland* prejudice, Petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander v. McCotter, supra,* 775 F.2d at 602; *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981).

The trial court reasonably concluded in this case that Petitioner failed to meet this standard. Petitioner did not present to the court, by affidavit or other competent evidence, what the pediatricians' testimony would have been or that it would ultimately have been favorable. To the contrary, he merely asserted in his post-conviction application that the witnesses should be called to testify at an evidentiary hearing. However, in the absence of any suggestion that the victim's pediatrician(s) conducted pelvic examinations of the victim between ages 5 and 10, there is no reason to suspect that they would be in a position to provide testimony regarding the presence or absence of evidence of sexual abuse. And although Petitioner asserts that the pediatricians' testimony would have been that the victim did not make any report of sexual abuse, this evidence would merely have been cumulative because the evidence was consistent at trial that the victim did not report the offenses to any non-family members until she told her best friend at the age of 13. Under the circumstances, the challenged failure to call the referenced pediatricians may not be viewed to be deficient representation, and the trial court's conclusion that the petitioner failed to support this claim of ineffectiveness was reasonable.

Accordingly, based on the foregoing, Petitioner has failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would

have been different.  *Strickland v. Washington, supra*, 466 U.S. at 694.

Petitioner's Claim No. 2, Regarding The Prosecution's Alleged Withholding
Of Material Evidence In Violation of *Brady v. Maryland*, Is Without Merit

Petitioner next asserts that the State withheld evidence from the defense in violation of *Brady v. Maryland, supra*.  In this regard, Petitioner asserts that after the trial, his wife addressed correspondence to Petitioner's appellate attorney wherein she recounted a purported meeting that the victim and the victim's stepmother had had with state prosecutors the evening before trial was to begin.  According to Petitioner's wife, the victim attempted to recant her accusation against Petitioner on that occasion and indicated to prosecutors that "nothing happened between [Petitioner] and her."  According to Petitioner's wife, prosecutors then threatened the victim with punishment and with potential jail-time for the victim's mother if she did not testify as she had previously indicated.  As a result, the victim withdrew her recantation and agreed to testify notwithstanding that she "did not want [Petitioner] doing a life sentence."

There are several problems with Petitioner's assertions in this regard.  First, the evidentiary support provided for these contentions is deficient.  Whereas Petitioner provided a copy of the purported letter written by his wife to the appellate attorney, the letter is unsworn, and Petitioner did not provide an affidavit or other testimonial assertion regarding the truth of the matters stated therein, the factual basis therefor, or the source of his wife's personal knowledge with respect thereto.  Second, the purported letter appears to present information that is entirely second-hand inasmuch as the letter does not indicate that Petitioner's wife was present during the purported meeting with prosecutors and inasmuch as the letter does not state from whom Petitioner's wife obtained the information.   Finally, it does not appear that the information relative to the meeting between the victim and prosecutors before trial was in fact withheld from Petitioner in any event.  In responding to this contention in Petitioner's post-conviction relief proceedings,

the attorney for the State asserted that she had provided all pertinent information regarding the meeting to Petitioner's attorney before trial. Specifically, she asserted in her opposing memorandum that the victim did in fact meet with prosecutors on the evening before trial and did in fact signify a wish to withdraw her testimony against Petitioner. Notwithstanding, after discussion with prosecutors – and purportedly without threats or coercion – the victim ultimately agreed to go forward with trial. According to the State's attorney, the attorney attempted to contact opposing counsel by phone that evening and, when that was unsuccessful, informed Petitioner's counsel the next morning about the meeting and the pertinent details thereof, including the retracted recantation by the victim. Petitioner has made no attempt to refute these assertions. As a result, it does not appear that the State withheld the referenced information from Petitioner as claimed.

The prosecution's suppression of material evidence favorable to the accused violates due process regardless of whether or not the prosecution acted in good faith or bad faith in failing to make a timely disclosure of the evidence. *Brady v. Maryland, supra*. Evidence that is "favorable to the accused" includes evidence that tends directly to exculpate the accused as well as evidence that impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The touchstone of materiality is a "reasonable probability" of a different result. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. As stated by the United States Court of Appeals for the Fifth Circuit:

> To establish a *Brady* claim, a habeas petition must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner,

and (3) the evidence was material.  In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id*. at 682.  Recently, the Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict.  *Kyles v. Whitley*, [*supra*, 514 U.S. at 435]....  Finally the materiality inquiry is applied to "the suppressed evidence collectively, not item-by-item."  *Id*. at 436.  Fifth Circuit decisions have expanded upon these statements, holding that "[t]he materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State."  *Smith v. Black*, 904 F.2d 950, 967 (5th Cir. 1990), *judgment vacated on other grounds*, 503 U.S. 930 (1992).

*Spence v. Johnson*, 80 F.3d 989, 994-95 (5th Cir. 1996) (citations omitted).

Applying the foregoing standard, it does not appear that the prosecution in fact withheld material evidence from Petitioner in violation of *Brady v. Maryland*.  The unsworn letter containing second-hand assertions of fact by a person who was not even present during the referenced meeting between the victim and prosecutors did not constitute sufficient proof of the matters stated therein.   Nor did Petitioner present to the state trial court any competent information refuting the contentions of the State's attorney regarding actual pretrial disclosure of the details of the meeting to Petitioner's trial attorney, such as an affidavit from Petitioner's attorney or from any of the participants at the pre-trial meeting attended by the victim.   On this showing, considering that the pertinent information regarding the meeting between the prosecution and the victim was apparently disclosed to Petitioner's attorney before trial and considering the lack of competent evidence regarding any purported undisclosed details thereof, the Court finds no error in the determination of the state trial court on post-conviction review that this claim was without merit because "the allegations are unsubstantiated and not within the personal knowledge of the declarant."

Petitioner's Claim No. 3, That He Was Convicted Based Upon
An *Ex Post Facto* Application Of La. R.S. 14:42, Is Without Merit

Petitioner next asserts that amendments to the Louisiana aggravated rape statute, La. R.S. 14:42, between the initial date charged in the Indictment as being when he allegedly sexually abused the minor victim, *i.e.*, December 2001, and the date that the Indictment charged that the abuse continued until, May 2007, resulted in his conviction being based upon an *ex post facto* application of the statute.   This contention is clearly without merit .

According to the Indictment in this case, Petitioner was charged with the aggravated rape of the victim in Ascension Parish when the victim was between the ages of 8 and 13, specifically between December 2001 and May 2007.   At the beginning of this period, in December 2001, the aggravated rape statute, La. R.S. 14:42 (which had been amended to include oral sexual conduct effective August, 2001) defined aggravated rape as being "anal, oral, or vaginal sexual intercourse – deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances …. (4) When the victim is under the age of twelve years." Subsequently, the statute was amended in 2003 to increase the limiting age of the victim from twelve to thirteen years of age.   Petitioner seeks to rely on this latter amendment to suggest that he was convicted based upon an *ex post facto* application of the statute, given that the statute provided different limiting ages during the period that the alleged offenses were occurring.

The Court finds that the referenced 2001 and 2003 amendments to La. R.S. 14:42, which respectively added oral sexual intercourse in the definition of aggravated rape and increased the limiting age of the victim from 12 to 13 years, did not result in a violation of the *ex post facto* clause of the United States Constitution.   In this regard, Article I, § 10 of the United States Constitution provides, in pertinent part, that "[n]o state shall ... pass any *ex post facto* law ...." The United States Supreme Court, however, has long delineated the types of laws that may run

afoul of the *ex post facto* prohibition:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.   2nd. Every law that aggravates a crime, or makes it greater than it was, when committed.   3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.   4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*See Rogers v. Tennessee*, 532 U.S. 451, 456 (2001), *quoting Calder v. Bull*, 3 Dall. 386, 1 L.Ed. 648 (1798).   Thus, in order for a law to be considered *ex post facto* in application, it must apply to wrongdoing occurring before its enactment, and it must disadvantage the offender affected by such law by altering the definition of criminal conduct or by increasing the punishment for such criminal conduct after the fact.   *See Lynce v. Mathis*, 519 U.S. 433, 441 (1997).   Therefore, the *ex post facto* clause's prohibition extends to a statute which "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."   *Collins v. Youngblood*, 497 U.S. 37, 43 (1990), *quoting Beazell v. Ohio*, 269 U.S. 167, 169-70 (1925).   A paramount concern of the Constitution's *ex post facto* prohibition is that a person be given fair notice of an offense or of punishment for an offense prior to the offense being committed.   *Weaver v. Graham*, 450 U.S. 24, 30 (1981).

The Indictment in this case charged that:

> JEREMY LANDRY, … within the jurisdiction of the Twenty-third judicial District Court of Louisiana, then and there being, committed the offense(s) of: AGGRAVATED RAPE, La. RS 14:42 in the Parish of Ascension in that: ON OR ABOUT DECEMBER 05, 2001 THROUGH MAY 17, 2007, IN THE PARISH OF ASCENSION, JEREMY LANDRY committed the offense of R.S. 14:42 AGGRAVATED RAPE, by committing aggravated rape upon C.L., DOB: 11/05/1993.

Given that the victim's date of birth in this case was noted to be November 5, 1993, it appears that

the Indictment charged Petitioner with having committed the referenced offense(s) at some point during a 6-year period between when she was aged 8 and aged 13.[4]  Notwithstanding, according to the uncontroverted testimony of the victim at trial, together with her taped and recorded statements adduced into evidence, it appears that she consistently asserted that the alleged sexual abuse occurred repeatedly in Ascension Parish after she moved to a residence in that Parish when she was seven or eight years old and that the alleged sexual abuse continued until it halted "all of a sudden" when she was ten years old.   It is this evidence that the jury had before it to determine when and where the charged offense occurred, and there was no evidence before the jury that indicated that any offenses occurred after the victim was ten years old.   As a result, the offense necessarily found by the jury to be proven clearly occurred during a period when the victim's age fell below the age limitation established by the statute, both before and after the amendment thereof, and the amendment to the statute did not alter Petitioner's exposure for his wrongful conduct.   Accordingly, there was no *ex post facto* application of the referenced statute, and Petitioner's claim in this regard should be rejected.

Petitioner's Claim No. 4, That He Was Convicted Based Upon
A Duplicitous Charge That Was Presented Disjunctively Or Alternatively, Thereby
<u>Creating Uncertainty And Violating His Right To Jury Unanimity, Is Without Merit</u>

Petitioner next asserts that the charging document in this case was duplicitous, meaning that it was presented disjunctively or alternatively in such a manner as to leave it uncertain as to what the jury found that convicted him and as to whether the jury was unanimous in its determination of guilt.   The Court finds this claim to be also without merit.

---

4        The parties apparently agreed before trial to amend the Indictment to reflect that the alleged offenses occurred while the victim was between the ages of 8 and 12, *i.e.*, between November 5, 2001 and November 1, 2006, shortly before the victim's 13th birthday.   *See* Tr. at p. 125. Notwithstanding, on the morning of trial, apparently for technical procedural reasons, the parties allowed the matter to proceed with the original dates as provided in the Indictment.

First, Petitioner's claim is essentially a challenge to the Indictment in this case and, as a result, this claim is not properly before the Court. As an initial matter, Petitioner's attorney did not object to the sufficiency of the Indictment before the state trial court, and this would generally be seen to be a waiver of any challenge thereto.[5] Further, in this Circuit, "'the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction.'" *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984), *quoting Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980). The *Liner* court further stated that a challenge to the sufficiency of a state indictment is valid for federal habeas purposes only when the indictment is so defective that under no circumstances could a valid state conviction result from facts provable thereunder and that this can be determined "only by looking to the law of the state where the indictment was issued." *Id. at 1203, quoting Johnson v. Estelle*, 704 F.2d 232, 236 (5th Cir. 1983). Further, when a state court has found that an indictment is sufficient under state law, a federal court need not address this issue. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Millard v. Lynaugh*, 810 F.2d 1403 (5th Cir. 1987). This conclusion follows from the "due deference to the state court's interpretation of its own law that a defect in an indictment does not deprive a state trial court of jurisdiction." *Davis v. Craig*, 66 F.3d 319, *3 (5th Cir. 1995), *quoting McKay v. Collins, supra*. To this end, the courts of this Circuit adhere to the rule that a federal habeas court will not consider such claims "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the

---

5       The Court notes the general rule in Louisiana that defects in an indictment or information are not subject to review in the appellate courts if they were not raised in the trial court before conviction. *See State v. Allen*, 824 So.2d 344 (La. 2002) ("[A] defendant may not raise the sufficiency of an indictment for the first time after conviction … especially when the charging document fairly informed him of the charge against him and the alleged defect did not prejudice him"); *State v. James*, 305 So.2d 514 (La. 1974); State v. Perkins, 155 So.3d 649.

state on appeal, and that court held that the trial court had jurisdiction over the case." *See Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985).

In the instant case, Petitioner asserted the above claim in the Louisiana Supreme Court on post-conviction review. That Court denied relief upon a writ of discretionary review. By refusing to grant Petitioner relief, the Louisiana Supreme Court has necessarily, though not expressly, concluded that the Louisiana courts had jurisdiction over the case and that the indictment was sufficient for that purpose.[6] *See Landor v. Cain*, 2014 WL 7342361, *19 (E.D. La. Dec. 23, 2014), *citing Alexander v. McCotter, supra*. Accordingly, this claim is not properly before the Court on habeas review.

Further, upon a substantive review, it appears that the Indictment in this case would pass constitutional muster in any event. In this regard, a charging document is sufficient for constitutional purposes if it both informs a defendant of the accusation against him, so as to enable him to prepare his defense, and affords him protection against double jeopardy. *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008). *See also* the Official Comments to La. Code Crim. P. art. 473, which note that a primary concern of a charging document is "protection of the defendant's constitutional right to be informed of the nature and cause of the accusation against him, and with requiring a description of the injured party ... adequate to support a plea of double jeopardy." Article 464 of the Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting

---

6 The Court notes the general rule in Louisiana that defects in an indictment or information are not subject to review in the appellate courts if they were not raised in the trial court before conviction. *See State v. Allen*, 824 So.2d 344 (La. 2002) ("[A] defendant may not raise the sufficiency of an indictment for the first time after conviction … especially when the charging document fairly informed him of the charge against him and the alleged defect did not prejudice him"); *State v. James*, 305 So.2d 514 (La. 1974); *State v. Perkins*, 155 So.3d 649 .

the offense charged." The indictment shall cite the relevant statute that the defendant is alleged to have violated, and it is not essential that the date, time or place of the offense be stated with particularity. La. Code Crim. P. arts. 468-69. In addition, words and phrases utilized in the indictment are given either their usual meaning or, where appropriate, their legal meaning. La. Code Crim. P. art. 477. Finally, a bill of particulars may be requested by either the defendant or the trial court to provide "more specifically the nature and cause of the charge." La. Code Crim. P. art. 484. *See also State v. Liner*, 397 So.2d 121 (La. 1979) (recognizing the validity of Louisiana's short form indictment).

In the instant case, Petitioner's Indictment identified the victim and made reference to the dates and place where the charged offense allegedly occurred and to the statute that Petitioner was charged with having violated. The Indictment further made clear, by providing the date of birth of the victim, that the aggravating factor that Petitioner was charged with was relative to the victim's age at the time of commission of the offense(s). Accordingly, this Court finds that there was no surprise or lack of notice as to the nature of the offense charged. Finally, any challenge to the Indictment by Petitioner's attorney would have resulted, at most, in the reconvening of a grand jury so as to amend the charging document to provide further clarification, thereby achieving, if anything, a mere delay in the trial and resulting in no prejudice in fact to Petitioner. *See State v. James, supra*, 305 So.2d at 518 (noting that an objection prior to trial or at trial could have secured an amendment to the charging document). *See also Tarver v. Cain*, 2007 WL 677171, *10 (W.D. La. Feb. 2, 2007) (finding no prejudice resulting from an attorney's failure to challenge an indictment because the prosecution simply could have "amended the indictments to cure any alleged defects"). Accordingly, this claim should be rejected.

In addition to the foregoing, Petitioner also asserts that the disjointed evidence in this case,

which included testimony by the victim regarding incidents of sexual abuse pre-dating the period alleged in the Indictment, together with the fact that the Indictment charged an offense occurring and continuing over an extended period of time, could have led to confusion on the part of the jury and could have led to his conviction being based upon a non-unanimous determination by certain members of the jury, *e.g.*, that Petitioner was guilty of incidents of sexual abuse that were not included in the charging document. Specifically, Petitioner asserts that disparate members of the jury could have variously concluded, for example, that Petitioner was guilty of sexual abuse occurring before the victim moved to Ascension Parish or guilty of oral sexual battery before the effective date of the 2001 statutory amendment (that made that behavior part of the aggravated rape statute) or guilty of oral sexual intercourse without anal sexual intercourse or *vice versa*. Notwithstanding, "courts have recognized the problem of time specificity in charging child sex abuse crimes" and generally conclude that a potentially duplicitous indictment is only invalid of it results in prejudice to the defendant. *See Delaney v. Cain*, 2015 WL 9673174, *7-8 (W.D. La. Oct. 20, 2015) (finding no prejudice where a petitioner was charged with the aggravated rape of two minor children occurring and continuing over a period of time). The *Delaney* court noted "the problem of time specificity" in child sex abuse cases but found that the trial in such cases "usually centers on the basic credibility of the victim rather than alibi or identity of the defendant" and that "an absence of specificity as to dates in resident child sex abuse cases does not generally prejudice the defendant's ability to present a defense." *Id., citing People v. Jones*, 792 P.2d 643, 657 (Cal. 1990). The *Delaney* court further noted that the petitioner in that case "had ample ground to attack the victims' credibility using the consistency of their accounts with each other and between various disclosures to relatives, child welfare professionals, and at trial." *Id.*

Similarly in the instant case, the Court finds that Petitioner was not prejudiced by the so-

called disjunctive and alternative nature of the evidence presented based upon the charge asserted in the Indictment. The Indictment clearly provided that the offense that was charged against Petitioner occurred between specific dates and occurred in Ascension Parish. Petitioner's attorney emphasized on multiple occasions in closing argument that the jury was required to find both of these elements in order to find Petitioner guilty of the offense charged. The Court is unable to conclude, therefore, that the result of the proceeding would likely have been different had the Indictment been worded differently or had the evidence been presented in a more coherent fashion at trial. Accordingly, the Court finds that this claim is lacking in merit and should be rejected.

Petitioner's Claim No. 5, That The Prosecution Made
<u>Prejudicial And Improper Remarks Before The Jury, Is Without Merit</u>

Finally, Petitioner asserts that the district attorney engaged in prosecutorial misconduct during *voir dire*, during trial, and during closing arguments before the jury that resulted in prejudice to Petitioner. Specifically, Petitioner asserts that the prosecution (1) provided a misleading definition of reasonable doubt during *voir dire*, describing the standard as being "doubt for which you can give a good reason," which has been criticized by the Fifth Circuit in *Humphrey v. Cain*, 120 F.3d 526, 529 (5th Cir. 1997), (2) elicited testimony during trial about Petitioner's failure to answer questions after *Miranda* warnings were given, (3) vouched for the credibility of a witness during closing argument, and (4) commented during closing argument about Petitioner's failure to testify at trial.

Initially, as to all of the above-referenced improper remarks allegedly made by the prosecution, the Court notes that no objection was raised in connection therewith by Petitioner's attorney during trial. As a result, these claims were arguably waived by Petitioner's failure to assert a contemporaneous objection thereto. Further, turning to a consideration of the

prosecution's conduct within the context of the entire trial, the Court does not find that such conduct rises to the level of error that rendered Petitioner's trial fundamentally unfair.

Pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005). It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). The Fifth Circuit has articulated the *Brecht* standard as follows:

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are in virtual equipoise as to the harmlessness, under the *Brecht* standard, of the error, then we must conclude that it was harmful. Moreover, the *Brecht* standard does not require in order for the error to be held harmful that there be a reasonable probability that absent the error the result would have been different.

*Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996) (internal citations and quotation marks omitted). *See also Anderson v. Warden, Louisiana State Penitentiary*, 2013 WL 1405423, *3 (W.D. La. Mar. 19, 2013) ("[E]rrors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis [under *Brecht*] … which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict"). Based upon a review of the record, the Court does not find that the prosecutor's comments, evaluated in the context of the entire trial, rendered Petitioner's trial fundamentally unfair. The evidence adduced at trial, although subject to impeachment, provided ample evidence of Petitioner's guilt, and the offending comments complained of by Petitioner were isolated, were not focused upon or emphasized, and did not have a substantial injurious effect or influence in determining the verdict.

First, with regard to Petitioner's assertion that the prosecution provided an erroneous or misleading definition of reasonable doubt during *voir dire*, the Court concludes that any deficiency in this regard was cured by the later instructions given by the trial court to the jury at the close of the case. Specifically, after the presentation of evidence and after closing arguments, the trial court instructed the parties on the law applicable to the case, specifically stating:

> The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. Thus the defendant begins this trial with a clean slate. The burden is upon the State to prove the defendant is guilty beyond a reasonable doubt and in considering the evidence you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence.

> If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. While the State must prove guilt beyond a reasonable doubt, it does not have to prove guilt beyond all possible doubt. Reasonable doubt is based on reason and common sense and is present when after you have carefully considered all of the evidence you cannot say that you are firmly convinced of the truth of the charge.

Tr. at pp. 376-77. Petitioner has raised no objection as to the trial court's instruction in this regard, and the law is well-settled that jurors are generally presumed to follow instructions that are given by the trial court. *See United States v. Ramirez*, 61 Fed. Appx. 121 (5th Cir. 2003); *Ayo v. Cain*, 2015 WL 8475523 *31 (E.D. La. Oct. 26, 2015) ("The jurors were properly instructed that they were not to consider the prosecutor's arguments as evidence, and '[j]urors are presumed to follow their instructions'"). Moreover, the mere use of the phrase complained of by Petitioner in the prosecution's *voir dire* definition of reasonable doubt, *i.e.*, "a doubt for which you can give a good reason," does not alone render a conviction subject to attack. *See Dupuy v. Cain*, 201 F.3d 582 (5th Cir. 2000) (noting that the referenced phrase was found to be objectionable in *Humphrey v. Cain, supra*, because it was emphasized and was accompanied by other objectionable qualifiers). In the context of the entire trial, therefore, this Court is unable to conclude that the prosecution's

utilization of this phrase during *voir dire* resulted in any prejudice to Petitioner.

Further, with regard to Petitioner's assertion that the prosecution (1) elicited a comment upon Petitioner's failure to respond to police questioning after being given *Miranda* warnings, and (2) made reference to Petitioner's failure to testify at trial, the Court does not find that this conduct constituted persistent or pronounced misconduct on the part of the prosecution that rendered Petitioner's trial fundamentally unfair or that likely affected the outcome of the trial.   First, as for the comment regarding Petitioner's failure to respond to questioning from police after *Miranda* warnings were given, it has been held that the prosecution is not permitted to comment upon a criminal defendant's failure to respond to such questioning.   *Doyle v. Ohio*, 426 U.S. 610 (1976). Notwithstanding, *Doyle* errors were found to be subject to harmless-error analysis in *Brecht v. Abrahamson, supra.   See also Roberson v. Johnson*, 141 F.3d 1165 (5th Cir. 1998).   In the instant case, the exchange that referenced Petitioner's failure to respond to questioning was brief and was neither emphasized by the prosecution nor repeated or relied upon during closing argument.   To the contrary, the entirety of the exchange was not such as would have highlighted to the jury the significance of Petitioner's silence:

Q: [D]id you read him his *Miranda* rights?

A: Yes.

Q: When you read somebody their *Miranda* rights what is the procedure you use?

A: We have a *Miranda* rights form that we use.   We have their name, the level of education.   We ask them – we go through the *Miranda* rights and have them sign that they understand, and then we have a portion where we ask them if they are willing to answer questions.

Q: And did you all that with Mr. Landry?

A: Yes.

Q: And was he willing to answer any questions?

A: No.

Tr. at p. 197. The State then introduced the referenced *Miranda* rights form, without objection, and the witness went on to testify that Petitioner had subsequently unilaterally volunteered information regarding his skin condition, psoriasis. *Id.* at p. 197. Based upon the totality of the evidence in this case, including the trial court's instruction to the jury at the close of evidence, which included reminders regarding the State's burden of proof and the fact that a defendant may not be compelled to testify, the Court is unable to conclude that Petitioner has shown a substantial and injurious effect upon the verdict flowing from this brief reference. *See Lyons v. Cooley*, 2017 WL 2952400 (W.D. La. May 30, 2017). Accordingly, the state court's determination that "in the context the statement was made there was no constitutional violation" was not an unreasonable application of law to the facts of this case.

Next, with regard to the comment during closing argument that may be interpreted as having been a reference to Petitioner's failure to testify, the United States Supreme Court held, in *Griffin v. California*, 380 U.S. 609 (1965), that the Constitution forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. *Id.* at p. 615. Notwithstanding, a *Griffin* error at trial is subject to harmless-error analysis, *Chapman v. California*, 386 U.S. 18, 25 (1967). *See also Davis v. Quarterman*, 237 Fed. Appx. 903 (5th Cir. 2007) (applying the harmless error standard set forth in *Brecht v. Abrahamson, supra*, to a *Griffin* error at trial). In the instant case, the comment made by the prosecution during closing was brief and, in any event, was only an indirect reference to Petitioner's failure to testify. Specifically, the prosecutor stated during closing:

> We talked about it during *voir dire*; sex offenses are private. You don't have an audience. Nobody but [the victim] and the defendant know exactly what happened.

Tr. at p. 373.   Comments such as this, that indirectly comment upon a defendant's failure to testify by noting that he possesses information that could rebut the charge against him, are subject to criticism when they are repetitive and pervasive.   *See Gongora v. Thaler*, 710 F.3d 267 (5th Cir. 2013) (involving repeated and blatant remarks and an inference of guilt stressed to the jury).   This single comment, however, is not such as would warrant a reversal of Petitioner's conviction or that would lead the Court to conclude that his trial was fundamentally unfair.   The jury was informed repeatedly by the Court that Petitioner was not required to testify and that no adverse inference should be drawn from his failure to do so.   In addition, Petitioner's attorney obtained from members of the jury venire during *voir dire* assurances that they understood that Petitioner was not required to testify and that they would not draw any adverse inference upon Petitioner's failure to do so.   Accordingly, the above comment by the prosecution may not be seen to have had a substantial and injurious effect or influence in determining the jury's verdict.   *See Davis v. Quarterman, supra.   Cf., Anderson v. Nelson*, 390 U.S. 523 (1968) ("comment on a defendant's failure to testify cannot be labeled harmless error in a case where such comment is extensive, where an inference of guilt is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal").

Finally, Petitioner complains that during closing argument on rebuttal, the prosecutor improperly vouched for the credibility of the victim, stating:

> [The victim] told you when she testified she cares about the defendant.   He was her father for thirteen years.   She didn't even know she had a real father.   That was her father.   You think it was easy for her to come in here?   You think it's easy for her to sit there by herself while her whole family including her own mother turns her back on her?   Was it easy for her to be removed from the home and go away from her mother and her brothers?   Does she have a reason to lie?   Would she do that?   I don't believe so.   I think he's guilty of aggravated rape.   Thank you.

Tr. at p. 375.   Based upon the totality of the circumstances in this case, the Court concludes that

the foregoing conduct of the prosecutor in seeming to vouch for the credibility of the victim was not so persistent and pronounced as to render Petitioner's trial fundamentally unfair, and that the evidence was not so insubstantial that in all probability, but for the prosecutor's remarks, Petitioner would not have been convicted. While it is true that a prosecutor is not allowed to vouch for the credibility of a witness where there is an underlying implication that the prosecutor's statements are based on additional personal knowledge about the witness or about facts not in evidence, such comments are not necessarily improper if it is apparent to the jury that the views are based on the evidence presented at trial rather than on personal knowledge of facts outside the record. *See Nicolos v. Scott*, 69 F.3d 1255 (5th Cir. 1995). In the instant case, there is no suggestion whatever that the prosecutor's comments were based upon additional personal knowledge about the case or about the witness. Further, it is well-recognized that the prosecution is granted greater leeway in bolstering the credibility of a witness during rebuttal argument when the prosecution is responding, as here, to attacks on such credibility by the defense. *United States v. Ajaegbu*, 139 F.3d 898 (5th Cir. 1998) ("[T]he government may present a bolstering argument 'in rebuttal to assertions made by the defense counsel in order to remove any stigma cast' upon a witness"). Accordingly, the Court is unable to conclude that the prosecutor's statements, as above-related, rendered Petitioner's trial fundamentally unfair.

Based on the foregoing, the Court concludes that Petitioner's application for habeas corpus relief should be denied.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may

address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus be denied, and that this proceeding be dismissed, with prejudice. It is further recommended that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on August 28, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**